Case number 13-4021 Mark Lay v. U.S.A. Argument not to exceed 15 minutes per side. Mr. Kerger for the appellant. Good morning. I'm Rick Kerger here on behalf of the appellant Mark Lay. I want to make one minor correction. There's an error on page 8 of our brief. We indicated that the ADF shares by the Ohio Bureau was 2013. It obviously is 2003. I think I should tell you what we're after. What we'd ask you to do is vacate the conviction on the first count and remand the case to the trial court to assess its impact on the sentence and on the conviction of the wire and mail fraud cases. Judge Dowd, in his analysis of the sentencing requirements, wrote a 35-page decision. On page 31 he said the primary crime for which Mr. Lay was convicted was the investment advisor, the first count. The one we're attacking here as being extraterritorial as applied. We raised the issue in our petition, but it didn't get addressed. The government initially focused on timeliness. By the way, I think Judge Dowd ruled... I'm unclear as to what you're telling us. You want to argue what... There's a decision by Chief Judge Bazelon out of the D.C. Circuit back in 1978 in which he said in U.S. v. Smith that if a count is reversed and other counts remain, the case can nonetheless be remanded, this is in footnote 16, to the trial court to assess the impact on those other counts of having this one removed. Okay, but you still have to get it removed, right? Yes, I have... Nothing happens until I get the first... What's the error that you're arguing, the error? The error is that at the time of the trial, the Supreme Court had not decided Morrison. The error is this is an extraterritorial application of the Investment Advisor Act because all of the actions were in Bermuda. The reason they went to Bermuda is no hedge fund wants to try to operate... You're wrong about the precedential value for this case of that civil case, the other Supreme Court case. If you're wrong about that, your argument fails as I understand it. Yes. So we have one issue there. That's the issue. The issue is when the Bureau elected, and the Bureau was sitting on $2 billion in its fund, and they had a number of... They had 70 investment advisors, of which Mr. Lay was one, and they decided to go into the Active Duration Fund. They did it for a peculiar reason. Their portfolio was largely bonds, and at that time, the market was moving in a way that the new bonds were going to have a higher rate of interest, which would depress the value of their portfolio. They went to Mr. Lay and others and said, what can we do about that? He said, the only thing you can do is hedge against it. Hedge against it, so that you short the bonds, so that if they drop, at least you'll make money over here. The fund was established in Bermuda. It's a Bermuda LLC. But this isn't a securities action. This is an action... This is a criminal case regarding his conduct as an investment advisor. Wasn't he advising the Bureau, the Ohio Bureau, in making representations to them? I don't understand your argument. Some years before, Your Honor, he had executed an investment advisor agreement with the Bureau for the Long Fund. The Long Fund expressly was forbidden from investing in hedge funds. In derivatives, anything unique and unusual had to be AAA rated and all this other stuff. They couldn't go in there. They're confronted with this problem. What can we do? I'll establish a hedge fund, and I will be the investment advisor to the fund, Active Duration Fund, and it will be administered by Olympia, a company based in Bermuda, who will provide the information, which was sent to MDL Capital, and they made some reports to the Bureau for sure, but it was passing on information that came from Bermuda. The money moved from Ohio Bureau of Workers' Compensation to Bermuda. I'm still troubled by something. Then I'm troubled by it, Judge. Yeah, I'm sure you would be. But he got a 60-month sentence on this one count that you're challenging to run concurrently. Yes. But the sentences on other counts that you're not challenging. And that was the point of my first statement in explaining what we asked. We think that the law would permit you to remand this case for him to assess whether or not the wire and mail... First off, Judge Dowd's retired, so he's not going to assess anything. And he's happily so. I'm sure because of these kind of cases. But nonetheless, nonetheless, his 60-month sentence, your client's 60-month sentence... Is done. Well, whatever. But it was run concurrently with the 144-month sentence. That's correct. So we throw out the 60-month sentence. What more could he get? 144 months. The mail and wire fraud counts, which led to the 144 months, are predicated on the transmission of information about leveraging that was the violation found... But you said you weren't challenging those. What I said was, we did challenge those in the initial petition. It wasn't addressed by the judge in his certificate of appealability. So we're not challenging those. But we attempted to. Well, we don't have a certificate of appealability on 2255, then we don't address those issues. But I think under the U.S. v. Smith decision... That Judge Bachelon's decision back in 1977? Old law is good law. Well, not because since 1984, we've had the Sentencing Reform Act. Right. But I don't think that... Counsel, we're not going to sanction you for relying on... I was thinking about that, Judge. I was getting a little nervous. I guarantee you that. We won't be sanctioned for misciting a case. Thank you, Your Honor. But I mean, my problem is, what's the harm, no harm, no foul? I think the court has the power to remand, and the district court has the power to look at those convictions, to decide whether they should stand in light of the fact that the violations found to have caused the violation of the Investment Advisor Act no longer exist because of extraterritoriality. But that's not in our certificate of appealability. So we can't consider that. So hence, you're arguing something, you're trying to backdoor the certificate of appealability. And there are two sides to a point. And this is March Madness. You're in... But, but... You are from Kentucky. Yes, I am. But, no harm, no foul. I mean, if we set aside, if we say that, you know, this 60-month sentence is wrong, then we order it be vacated. I got one arrow in my quiver left. Let's try that. Okay. In his sentencing order, he added four points because he was an investment advisor. And I don't know what the judge would do, but it might reduce the sentence. It says that. Well, he added four points. But you're talking about something that's not being challenged by a certificate of appealability. Well, I think the conviction is, and then by, of necessity, the impact on... There you go, playing P.D. Carroll again, backdoor play. As I say, sometimes they work. And if, in fact, the case looks different to the judge on remand, he could amend his sentence. I think he could amend it. It's no longer part of the case. What was wrong with his sentence? The sentence, as you say, the case before us is a 60-month sentence. That's correct. That conviction should be vacated, right? Yes. Okay. Assuming we find that it should be vacated, why do we need to remand it? Because I think the trial judge has a right to look at it and see if he views it differently. Speaking from the position of a trial judge, he didn't want to see it again. He didn't want to see it the first time. But then, fortunately, he had to see it the first time. This time he doesn't. Well, he does if you'll remand it, Your Honor. Are you saying that your client did not give advice in the States to an Ohio agency? He certainly... The long fund continued. And he gave advice under the investment advisor agreement with the Bureau on the long fund, which did not include the funds from ADF, went to ADF. And what about the representations? What about getting over leveraged and hiding that and all the rest of it? It is our position that the record shows that the information came from Olympia in Bermuda and was merely passed on through MDL Capital. Okay, but he did pass it on, right? Yes. Okay. But your whole argument is that there's an insufficient nexus, right? Right, under the Georgia Third Circuit decision in Georgia, which came out this year. Okay. You look at where the transaction went when they have the irrevocable discommitment to the transaction, and our position is that occurred in Bermuda. That's where the money went, and that's where Olympia decided to accept them as an investor. And as far as, one point I'll make before I sit down on the timeliness issue, I don't think the petition is timely before you. And I'll save the balance of my time. Thank you. Good morning, Your Honors, and may it please the Court. Matt Cronin for the United States. Your Honor, this Court should deny defendant's appeal on at least two grounds. Your Honors have already covered a lot of the reasons why a defendant fails in a procedure defaulted, if I may, in a moment. Before doing that, though, I would like to correct a few inaccuracies defendant introduced into the record in his briefs and now in oral argument. First, the defendant stated that because the Bureau chose to go into the ADF agreement, and that there was essentially a forum selection clause, saying it falls under the law of Bermuda, therefore his client can't be held criminally liable under U.S. law. That is absolutely untrue, goes against U.S. criminal jurisprudence. And as numerous courts interpreting the Investment Advisors Act have interpreted in Morrison, in Villers, this circuit in Coffman recently, and the second circuit in Amarindo, they all held that a party's intent is irrelevant. It's when a portion of the transaction, quote, occurred domestically. And as defendant himself admitted in oral argument, he said, I quote, the money moved. And where did it move from? The domestic MDL fund over to this ADF fund. He, in a sense, betrays himself. Under this court's rulings, that itself alone... He was mainly in the U.S. of A, right? That is exactly right. He's manipulating the funds from one place to another. That is exactly right, Your Honor. As established in the record, defendant's conduct in this case was definitively domestic. He committed... He was a U.S. person, based in the U.S., in Pennsylvania, perpetrating a fraud through wires, mails, faxes, emails, various prime brokerages and bond dealers in the United States, against a victim, a state agency, the Ohio Bureau of Workers' Compensation. This was definitively domestic. Now, Your Honor, defendant said in this, here, he raises an inaccuracy, saying that the Bureau's investment was illegal under Ohio law. The district court already addressed this issue and rejected it. It is a law of the case. On page 663 of the district court's opinion, he actually stated that, and put into the case, a citation to the record, a transcript, saying that the Bureau actually changed its policy in 2002, allowing these sorts of investments. So that's a moot point. In fact, the district court... That may have been a mistake. Well, that may be true, Your Honor, but in relation to the defendant, it does not help him one bit. And, in fact, Your Honor, the district court also noted that the defendant brought this argument up for the first time after trial, and on page 676, he notes that there's nothing in the record supporting his contention that it's illegal. Beyond that, Your Honor, I also want to note that defendant makes this claim now, that the investment advisory relationship goes to the long fund and not to the investment advisory... Sorry, my apologies, the ADF fund. That, again, is already law of the case in a factual finding made earlier by the district court and the circuit court here, where it held, on page 445 and 446 of the circuit court opinion, this court held, quote, that Leigh owed the Bureau a fiduciary duty with respect to the ADF, and it was part of a single investment strategy, the ADF and the long fund, and therefore part of the Bureau's single relationship with Leigh. This court has already held he had an investment advisory relationship. And, yeah, those are the big inaccuracies, Your Honor. Then I'll just move real quick, if I may, to discussing the procedural default. Your Honors, defendant procedurally defaulted in this case when he filed his 2255 motion out of time, more than one year after the Supreme Court denied... Well, just did the judge have the authority to say we're going to have equitable tolling because of the situation with his lawyer? It's an... The holding, admittedly, Your Honor, is a little odd because he actually did not rule on those grounds. He just says, I declined to rule. He essentially abstained, which, again, defendant mentions here that we didn't appeal the issue. He didn't decide it. He actually decided in our favor on a different ground. And as Your Honors are aware, this circuit has the authority to affirm a denial on any ground, up to including that point. And, Your Honor, as the D.C. Circuit recently noted in Baxter, more than every circuit that has considered this issue, more than eight are unanimous that finality attaches, quote, when a petition for certiorari is denied, not when a subsequent petition for rehearing is denied. And this court should not create a circuit split by holding otherwise. And lest there be any doubt here, Your Honor, the Supreme Court in Clay held conclusively that finality attaches, quote, when that court denies a petition for writ of certiorari. And it said that finality in this context has a long-recognized clear meaning. And, again, lest there be any doubt from that, Your Honor, we only have to look to Supreme Court Rule 16.3, which states that finality cannot be suspended absent a specific order from a Supreme Court justice, which did not happen here. And lest there be any doubt from that, Your Honor, we look to the fourth circuit decision in Seegers, which used that exact analysis to say finality attaches at the moment when the Supreme Court denied cert, and the Supreme Court denied cert in that case. And just, you mentioned, Your Honor, Judge White, you mentioned equitable tolling. I'll just mention briefly that equitable tolling is in no way an appropriate remedy in this case. It is an exceptionally rare doctrine. You have to demonstrate, the defendant himself, not through his attorney, the defendant himself has to demonstrate his own reasonable diligence to effectuate his rights, keep track of the deadlines, and to file it himself pro se if necessary. He has in no way demonstrated that. There's nothing in the record, and it is his burden to establish that record to show that. All we have is in his reply, his attorney says, I think he may not have had other counsel at that point. If he was right about this, this would take care of the whole case? Absolutely, Your Honor. This court canon should hold this issue on procedural grounds alone. Oh, and just to touch on the second point for equitable tolling, there's no exceptional circumstance. Courts in this circuit have noted that, quote, a lack of communication from an attorney or failure to file a motion on time cannot be considered an extraordinary circumstance. So he loses on that ground alone. And to go a little bit in reverse order now, we're going so, his conduct is definitively domestic. This court canon should rule on procedural grounds. And beyond that, Your Honor, Morrison in no way applies to any of his counts of conviction. Defendant has already conceded for the first time in oral argument that it does not apply to the wire and mail fraud statute. He is correct. That's the statements made by the Supreme Court itself and Morrison. And, of course, the Supreme Court has held the same in cases like Pasquantino. Then you move on, Your Honor, to whether or not Morrison applies to the Investment Advisers Act. And, Your Honor, there's good reason why no court has ever held that Morrison applies to the Investment Advisers Act. In fact, as the Southern District of New York mentioned in Amarindo, noted in Amarindo, quote, neither the Supreme Court nor the Second Circuit has extended Morrison to the Investment Advisers Act. And so accordingly, they join the widely held position that Morrison neither altered nor added to the requirements for liability under the Investment Advisers Act. And their analysis in these cases make complete sense. Because the Investment Advisers Act, Your Honor, is broader in scope, as the Supreme Court noted, in trans-America and capital gains has to be effectuated broadly and flexibly to go after its broader purpose, to go after investment advisor conduct, as Your Honor noted, Judge Merritt, which is broader than just the 34 Act, which is narrowed down to a national securities exchange. So, and again, I direct this Court's attention to analysis in our briefing, and, of course, analysis by the Southern District in Gruss, which goes into great detail for why they do not apply. So, Your Honor, the, oh, and then one more point on the domesticity, Your Honor. Just, I direct this Court's attention not only to Kauffman, which states portions of transactions itself are all you need to show domesticity. In the Second Circuit in Villers, which the Supreme Court again denied cert there, the Court held three instances were sufficient to show domesticity. First, each separately. First, when a victim entered into an investment advisor agreement in the U.S., the Bureau did that here. Second, when a victim executed investment documents in the U.S. and sent them via messenger, the Bureau did that here. And third, when a third victim sent money from the U.S., the Bureau did that here, when it transferred money from the MDL Long Fund, domestic-based, to the MDL ADF Fund, which was not. And I note, Your Honor, Kauffman, Villers, and Marindo, Gruss, they all involve the same type of fact pattern. A defendant who used a wholly foreign incorporated fund to effectuate a fraud on victims in the United States. So, Your Honor, unless this Court has any further questions on this issue, I urge this Court to deny defendant's appeal. He procedurally defaulted. He has no grounds and no argument under Morrison, and thus his appeal should be denied. Thank you. Thank you. Allow me briefly to deal with three points he raised. Judge Dowd on August 17, 2012. Against this background of the uncertainty as to when the one-year statute of limitations begins to apply, together with the fact that Petitioner's Counsel is not involved in Petitioner's Appeal, coupled with the fact that Percy Squire's suspension, coupled with the doctrine of lenity, the Court declines to deny Lays 2255 motion on the grounds that it was untimely filed. That sounds like a finding to me. He declined. He didn't rule, though. He declined to make a ruling. Seems to me, Judge, I'm not... There's not really any uncertainty about when the time starts to run. I'm just reading what Judge Dowd... Oh, I know that, but... And what they didn't appeal. Well, they didn't appeal that, but he declined to make that ruling. But he then subsequently went ahead and ruled on it. But... Second. Well, can you give me some advice as to when we should take you and shame you by making you go out in Fountain Square and let us throw marshmallows at you? Sanctions. Sanctions? Yeah. I like those better than $7,500. Yeah, well... Secondly, I don't have a case that says the Investment Advisors Act is not expertorial. I do have the case, though. United States Securities and Exchange v. Banger decide... But we get back to the thing that even if it is applies to the investment advisors... If we vacate it, we want to... You still get back to that point, we've got 144 months that he's going to serve. If you look at footnote 16 of the U.S. v. Smith decision by Judge Bazelon, he explains why... In 1977, in the D.C. Circuit. Yes. I don't think that's really binding on us. It's not binding, but it's informative as to the power... Well, it may be informative, yes, but not binding. Not binding. In the Banger... Did you find anything more recent? Candidly, no. But it's not been overruled. But more recent? No. He's got about four different grounds why you should lose counsel for the government here. He's gone over... Maybe there are more than four. So, which of the other ones do you want to address? I wanted to address the Investment Advisors Act extraterritoriality. The Securities and Exchange Commission, in U.S. Securities and Exchange v. Banger 934 F. Sub. 2nd. 1008, noted that if the broker, not an investment, but a broker, is providing advice only on foreign transactions, he's not subject to the Act because it's done. And I would argue that's what... Subject to the 1934 Act? Yes. But we're not dealing with that Act. But I think the logic in Morrison and these other cases extends the same way. You better be ready to start dodging marshmallows. I've got that feeling, Your Honor. In U.S. v. Georgiou, they did construe that Morrison said that what you look at is where, not where the parties talked, but where they incur irrevocable liability. Well, let's look. I mean, basically the only thing that had anything to do with Bermuda was that's where the funds were. And where the... That's where he sent all the money from Ohio, from the pension plan or whatever it was, down to Bermuda. He counseled them about how well to do this and this would be a good deal. And it just happened that that's where the money went. Well, it's not just happened. It's what the company was set up and under whose laws the company operated. You can't have laws in the United States like that, counsel. I mean, we live in a global economy. All the actions and the strings were being pulled from the United States. We can't have absence of any kind of responsibility if you stick the money somewhere else and you do all the acts of deception from here. With a sophisticated investor who opts to put himself or itself in that position, I think you can, Judge. They elected for reasons they considered good and sufficient to put their money over there. And I don't know... They didn't elect to get defrauded. But they elected to operate under the laws, the perspective of the memorandum. That's what you think. But I'm afraid that we couldn't very easily have any much deterrence if investment advisors and brokers and everybody could just stick the money in Bermuda or this place or that and therefore avoid any responsibility for deception, defraud. You know, I mean, that doesn't make sense, counsel, does it? It does when you have people who make that decision intelligently. They say, I'm taking my money, I'm sending it over there because I see advantages tax-wise and everything else. But then I also want to hang on and have you controlled by the law. So I want, in effect, Judge, what you're saying is the investor can have his cake and eat it too. He can get the tax advantages, he can get the other advantages of having his money earning in Bermuda. Well, you know, if he didn't have the intermediary, maybe the investor would be out of luck. But your client was the intermediary who was advising them to go ahead and do this and that was bringing back to them, pursuant to this Ohio relationship, bad and incorrect information that was covering up the situation. Provided by Olympia out of Bermuda. I would argue he was no more than a pastor. It went through his server. Oh, sure, but the jury didn't agree. And, you know, it's the facts most favorable to the prosecution right now. I think we understand your argument anyway. Thank you all. Any other questions? Good luck in the... Thank you. Thank you both. 40 and 0 is a goal.